UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWIN PARRA,

                                   Plaintiff

-vs-

DR. LESTER WRIGHT, et al.,

                                  Defendants
_____

DECISION AND ORDER

11-CV-6270 CJS

INTRODUCTION

Edwin Parra ("Plaintiff") is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), and Defendants are all medical personnel employed by DOCCS. Now before the Court is Plaintiff's application for preliminary injunctive relief. (Docket No. [#19]). The application is denied.

BACKGROUND

Plaintiff suffers from degenerative disease in his lumbo-sacral spine. On May 26, 2011, Plaintiff commenced this action, proceeding *pro se*. At that time, Plaintiff was housed at Southport Correctional Facility ("Southport"). The Complaint [#1] alleges, pursuant to 42 U.S.C. § 1983, that Defendants denied him medication and treatment for his spine condition at Southport, in violation of the Eighth Amendment. More specifically, the Complaint alleges that at a different correctional facility, prior to Plaintiff being transferred to Southport in April 2011, he was receiving Ultram and Neurontin pain medications, physical therapy and a

1

back brace, but that upon his arrival at Southport, medical staff discontinued the medications and therapy and confiscated his brace.

On September 17, 2012, Plaintiff filed the subject application (Docket No. [#19]) for preliminary injunctive relief, seeking an order directing medical staff at Southport to provide him with the following: "previously prescribed medications," presumably meaning Ultram and Neurontin; a transcutaneous electrical nerve stimulation ("TENS") unit; "physical therapy"; "double mattress"; and a "back brace." In support of the application, Plaintiff states, as he does in his Complaint, that medical staff at Southport are treating him differently than medical staff at other DOCCS facilities in which he has been housed. Plaintiff further states that on more than one occasion when he has been transferred to Southport, Defendant Wesley Canfield, M.D. ("Canfield") has discontinued all of his pain medications and treatments.

On September 19, 2012, Canfield responded to Plaintiff's application by pointing out that on April 9, 2012, in connection with a motion to dismiss, he had submitted an affidavit [#14-3] in which he agreed that he had discontinued Plaintiff's medications and treatments, because they were unnecessary. In that regard, Canfield stated that he reviewed Plaintiff's medical file and determined that Plaintiff's prescribed pain medications, Neurontin and Ultram, were not needed, since a 2009 nerve conduction study was normal, and a 2008 MRI test showed only degenerative disc disease with "minimal" nerve root impingement. Canfield also stated that in making his decision, he had considered Plaintiff's history of drug

abuse and smuggling, and decided that Ultram and Neurontin were "counter indicated" for Plaintiff. However, Plaintiff pointed out that Canfield did not explain why other doctors employed by DOCCS apparently disagreed with his assessment.

Consequently, on October 3, 2012, the Court issued a Decision and Order [#22] directing Canfield to provide additional information. Specifically, the Decision and Order stated, in pertinent part:

> [I]t is hereby
>
> ORDERED, that on or before October 16, 2012, in connection with the subject motion for preliminary injunctive relief, Defendants are to file and serve an affidavit, from a medical doctor with personal knowledge of Plaintiff's condition, and attach relevant portions of Plaintiff's ambulatory health record, explaining: 1) any particular treatments that have been recommended or prescribed by any doctor, whether or not employed by DOCCS, for Plaintiff's back condition; and 2) whether Canfield's decision to stop Plaintiff's treatments is consistent with those recommendations/prescriptions, and if not, why not; and it is further
>
> ORDERED, that on or before October 31, 2012, Plaintiff shall file and serve any response.

Decision and Order [#22].

On October 16, 2012, Dr. Canfield filed a supplemental declaration [#23]. Canfield stated that when Plaintiff arrived at Southport in April 2012, from Five Points Correctional Facility ("Five Points"), doctors at Five Points had been prescribing Plaintiff Neurontin, Ultram and a TENS unit, but not a double mattress. Canfield indicated, though, that with the exception of the TENS unit, which Plaintiff

3

received at Southport, he discontinued those treatments, for several reasons, including the following: 1) instead of Neurontin and Ultram, he directed that Plaintiff receive non-steroidal anti-inflammatory drugs ("NSAIDS"), which produce the same results as Ultram and Neurontin but do not have the same serious negative side effects; 2) Neurontin is not appropriate for Plaintiff in any event, since he does not have neurologic pain in his legs; 3) Plaintiff has a "significant history of drug-seeking and drug abuse," and Utram has a chemical structure similiar to opioids, which makes the drug desirable to inmates who want to abuse the drug; 4) in 2012 the FDA cautioned against prescribing Ultram to addiction-prone patients; 5) Ultram can increase a patient's risk of suicide; 6) Plaintiff may be malingering to obtain the medication, since he is still able to play basketball and softball; and 7) there is no medical literature to support Plaintiff's belief that a "double mattress" is appropriate for back pain.

On October 16, 2012, Plaintiff filed a declaration [#24], apparently written before he received Canfield's affidavit [#23], in which he refers to treatment recommendations that have allegedly been made by other doctors, and states that "Dr. Canfield and staff ha[ve] prescribed many medications and treatments, other than what was previously prescribed . . . even though they have not given me any real relief." *Id*. at ¶ 6.

On October 23, 2012, Plaintiff filed another declaration [#25], that was apparently drafted after receiving Canfield's affidavit [#23]. Plaintiff indicates, *inter alia*, that NSAIDS are not appropriate to treat him, and that Canfield is slandering

4

him by suggesting that he is possibly malingering to obtain drugs.  In addition, Plaintiff states that he no longer plays sports.  Plaintiff also suggests, incorrectly in the Court's view, that Canfield failed to respond appropriately to the Court's Decision and Order [#22].

On December 10, 2012, Plaintiff notified the Court that he had been transferred to Attica Correctional Facility ("Attica").  On January 22, 2013, the Court received a letter from Plaintiff, who is still housed at Attica, in which he now contends that the medical staff at Attica are failing to provide him with appropriate medical care.  Plaintiff states that, similar to Canfield, the medical staff at Attica are denying him the medications and treatments that he was receiving prior to being transferred to Southport in 2012.  Plaintiff states that he has been to "sick call" at Attica several times, but is not obtaining relief.

## DISCUSSION

At the outset, the Court will rule on Plaintiff's application notwithstanding the fact that he has now been transferred from Southport to Attica, which would ordinarily moot his application. *See, Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (citations omitted).  On this point, "[a]n exception exists where a claim is 'capable of repetition, yet evading review.'" *Yergeau v. Vermont Dept. of Corrections*, Civil Action No. 5:09-CV-141, 2010 WL 1472899 at *2 (D.Vt. Mar. 8, 2010). The Court finds that such exception exists here, since DOCCS could, in theory, transfer Plaintiff to evade review, and Plaintiff contends that he is still being denied appropriate

medical treatment at Attica.

The standard to be applied when considering an application for preliminary injunctive relief is well settled:

> A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. When the movant seeks a 'mandatory' injunction-that is, as in this case, an injunction that will alter rather than maintain the status quo-[he] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits.

*Doninger v. Niehoff*, 527 F.3d 41,47 (2d Cir. 2008) (citations omitted). A district court may deny a motion for preliminary injunctive relief without a hearing, and its decision to do so is reviewed for an abuse of discretion. *Wall v. Construction & Gen. Laborer's Union*, No. 036091, 80 Fed.Appx. 714, 2003 WL 22717669 at *1 (2d Cir. Nov. 17, 2003).

Violation of a constitutional right is considered "irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996) ("The district court ... properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); *see also, Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir.1998) ("In the context of a motion for a preliminary injunction, violations of First Amendment rights are commonly considered irreparable injuries.") (citation and internal quotation marks omitted). Accordingly, to the extent that Plaintiff's Eighth Amendment rights were being violated, that would establish irreparable harm.

However, the Court finds that Plaintiff has not shown "either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them

a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor."  In that regard, the legal standard applicable to Eighth Amendment medical claims is well settled in this Circuit:

> To substantiate an Eighth Amendment claim for medical indifference, a plaintiff must prove that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A deliberate indifference claim requires a showing of both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir.2003). "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996) (citation and internal quotation marks omitted). Where the allegation is that the defendant failed to provide any treatment for the medical condition, "courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir.2006). Where the challenge is to the adequacy of the treatment provided, such as in cases where treatment is alleged to have been delayed or interrupted, the seriousness inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Smith*, 316 F.3d at 186.[1]  Moreover, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir.2011); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998).
>
> "Subjectively, the official charged ... must act with a sufficiently culpable state of mind." *Curcione*, 657 F.3d at 122 (citation and internal quotation marks omitted); *see also Chance*, 143 F.3d at 703.  A person acts with deliberate indifference to an inmate's health or safety only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

---

[1] In the instant case, Plaintiff's challenge is to the "adequacy of the treatment provided," since he alleges that Defendants interrupted treatments that were already in place.

inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Hanrahan v. Mennon*, No. 11–1367–pr, 470 Fed.Appx. 32, 33, 2012 WL 1764196 at *1 (2d Cir. May 18, 2012) (underline added).

However, courts have repeatedly held that mere disagreements over treatment do not rise to the level of a Constitutional violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").[2]  For example, this Court has previously held that an inmate's 8th Amendment claim, based on his layman's belief that the prison doctor should have been giving him prescription pain medication instead of over-the-counter pain medication, amounted to a mere disagreement over treatment. *See, Morene v. Alves*, No. 03-CV-6485 CJS, 2006 WL 2094694 at *6 (W.D.N.Y. Jul. 14, 2006); *see also, Martin v. Niagara County Jail*, No. 05–CV–868(JTC), 2012 WL 3230435 at *10 (W.D.N.Y. Aug. 6, 2012) ("Plaintiff's demand for narcotic pain medications and defendants' unwillingness to prescribe them does not create an Eighth Amendment claim."); *Guarneri v. Wood*, No. 08–CV–792 (TJM/DRH), 2011 WL 4592209 at *13 (N.D.N.Y. Sep. 2, 2011) ("Guarneri's claims that he should have received a different type or doseage of pain medication to alleviate the resulting symptoms from his knee injury are also insufficient to raise a question of fact. The record shows that defendants did attempt to treat Guarneri's subjective complaints of pain with a variety of medication. Defendants regularly offered Guarneri non-narcotic pain medication and he refused it because he felt that he should be prescribed different

---

[2] Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

medication. Guarneri's complaints about the type of medication given to him for pain again amounts to a disagreement over treatment, which is insufficient to allege a constitutional violation.").

In the instant case, Plaintiff admits that he has been provided with a TENS unit, so that portion of his application is moot. This leaves his request for Ultram, Neurontin, physical therapy, a back brace and a double mattress. In that regard, Plaintiff admits that "Dr. Canfield and [his] staff ha[ve] prescribed many medications and treatments, other than what was previously prescribed . . . even though they have not given [him] any real relief." Pl. Decl. [#24] at ¶ 6. In response, Canfield has explained his approach to Plaintiff's treatment, and why he has declined to provide other treatments to Plaintiff. Viewing the entire record, including Plaintiff's allegations concerning the treatment he is currently receiving at Attica, Plaintiff's claim seems to be a mere disagreement over treatment which does not rise to the level of a constitutional violation. Consequently, the Court finds that Plaintiff is not entitled to preliminary injunctive relief.

## CONCLUSION

Plaintiff's application for preliminary injunctive relief [#19] is denied.

So Ordered.

Dated:     Rochester, New York
           February 4, 2013

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge